IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CAROL FOSTER                                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:16CV091-NBB-JMV

ALICE SMITH, In Her
Official Capacity as Quitman County
Tax Assessor/Collector, and
QUITMAN COUNTY, MISSISSIPPI                                                      DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court finds that the motion is well taken and should be granted.

Factual and Procedural Background

This action arises from the plaintiff Carol Foster's claim that she was wrongfully discharged from her employment as a deputy tax assessor for Quitman County, Mississippi, because she openly supported the incumbent tax assessor/collector, Willie Holley, who was defeated by defendant Alice Smith. Smith was elected Quitman County Tax Assessor/Collector on November 3, 2015, and informed the plaintiff by letter dated December 21, 2015, that the plaintiff would no longer be employed once Smith took office. The plaintiff filed the present section 1983 action on May 17, 2016, asserting claims that her First and Fourteenth Amendment rights were violated, specifically her rights to free association and free speech, when she was fired allegedly because of her support of Holley.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

The plaintiff alleges that her dismissal by defendant Smith constituted a "patronage dismissal" in violation of the First Amendment. Specifically, the plaintiff asserts that she was fired because of her loyalty to, support of, and campaigning for the incumbent tax assessor/collector, Willie Holley. The plaintiff claims she was terminated because she worked for the defendant's opponent, openly supported the opponent in the election, and "sat with him in plain view of Defendant while the votes were being counted" on the night of the election. The defendants assert that the plaintiff has presented no credible evidence that Smith even knew that Foster had campaigned for the incumbent, Holley. The defendants further argue that the plaintiff is both a "policymaker" and a "confidential employee" as those terms are defined by applicable

2

case law and that, as such, the plaintiff could be terminated by the defendant without suffering a violation of her First Amendment rights.

The defendants rely heavily on *Stegmaier v. Trammell*, 597 F.2d 1027 (1979), in which the Fifth Circuit held that a public employee who was the single deputy and assistant to an elected circuit court clerk could be discharged solely on the ground of her political affiliation without infringing her constitutional rights because she fell within the "confidential employee" exception to the general proscription of patronage dismissals set forth in *Elrod v. Burns*, 427 U.S. 347 (1976). As the plaintiff notes, however, the analysis of patronage dismissal cases has evolved in the Fifth Circuit since *Stegmaier*.[1] The categorical approach of determining whether a public employee is a "policymaker" or "confidential employee" may no longer, by itself, deprive the employee of protection from discharge based on political association. *See Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1009 (W.D. Texas 2000). Such an approach was expressly rejected in *Branti v. Finkel*, 445 U.S. 507 (1980), where the Court explained that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation[2] is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. Though a finding that a plaintiff was a policymaker or confidential employee is no longer the end of the inquiry, the courts continue to recognize that employees in these roles

---

[1]*Stegmaier* remains good law, however, having never been expressly overruled. Further, it contains rationale helpful to the court's decision, as addressed below.

[2]The Fifth Circuit has recognized that "the *Elrod-Branti* doctrine applies when an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party." *McBee v. Jim Hogg County, ("McBee I")*, 703 F.2d 834, 838 (5th Cir. 1983), *vacated on other grounds*, 730 F.2d 1009 (5th Cir. 1984) (en banc).

3

receive less First Amendment protection than those not in such positions. *Gomez*, 91 F. Supp. 2d at 1009.

The Fifth Circuit provided a helpful and informative overview of free speech and political association jurisprudence in *Gentry v. Lowndes County, Miss.*, 337 F.3d 481 (5th Cir. 2003), stating:

> In a number of cases, the Supreme Court has established that public employees do not necessarily shed their First Amendment rights of speech and political association in exchange for their jobs, but they often must make adjustments. That is to say, the Court has acknowledged that public employees' exercise of certain First Amendment rights may legitimately be restrained where it could lead to an inability of elected officials to get their jobs done on behalf of the public. Courts must balance these important public and individual interests in order to determine the constitutionality of particular adverse employment actions. The balancing test pertinent here considers among other things the policy sensitivity of the employment, the nature and content of the employee's speech or political activity, the extent of public concern implicated by the speech, and whether close confidential working relations with elected officials are necessary. This circuit, interpreting the Court's decisions, places cases involving only political association, only speech, or a combination of the two on a spectrum. Where non-policymaking, non-confidential employees are discharged solely because of their private political views, little, if any, weighing of an employee's First Amendment rights against an employer's right to loyal and efficient service is necessary, and the employee's rights will usually prevail. On the opposite end of the spectrum, however, are cases where employees' exercise of First Amendment privileges clearly over-balanced their usefulness. When cases fall within the spectrum, courts are to balance the extent to which "public concerns" are implicated by the employees' speech or association against the significance of maintaining a close or confidential working relationship with the public employer. *Kinsey* [*v. Salado Indep. Sch. Dist.*][3] emphasizes that where a public employee (there, a school superintendent) occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights.

*Id.* at 485-86.

---

[3] 950 F. 2d 988, 993-94 (5th Cir. 1992) (en banc).

After a thorough and extensive examination of the Supreme Court jurisprudence on free speech and political affiliation, the Fifth Circuit arrived at a balancing test for public employee dismissal cases of this nature in *McBee v. Jim Hogg County*, 730 F.2d 1009, 1014 (5th Cir. 1984) (en banc), forged specifically from the Supreme Court's decisions regarding pure speech, *Pickering v. Bd. of Ed.*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983), and its political affiliation decisions in *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980). The *McBee* court held that each public discharge case should "be considered on its particular facts, sifting through such factors and circumstances as the *Connick* Court outlined in order to strike the proper balance between the employee's speech and associational rights as citizen and the state's right as an employer to loyal and efficient service." *McBee*, 730 F.2d at 1014.

Under *McBee*, a court evaluating a First Amendment claim by a public employee should, in locating the claim on the spectrum of employee and employer interests, consider "to what degree the [employee's] participation in the election campaign or [her] actions involve 'public concerns' and whether 'close working relationships are essential to fulfilling [the employee's] public responsibilities.'" *McBee*, 730 F.2d at 1016 (quoting *Connick*, 461 U.S. at 151-52). The *McBee* court cautioned that "the 'closeness' of a working relationship as it affects job performance" concerns more than the size of the office or the number of persons involved, but rather is a function of the particular public responsibility being carried out. *Id.* If the court finds close working relationships essential, "it must then determine whether the particular speech [and other conduct] sufficiently disrupted the working relationship as to prevent effective performance, requiring a stronger showing of disruption as the employee's speech moves closer

5

to core 'public concerns.'" *Id.* at 1017 (quoting *Connick*, 461 U.S. at 152). In determining the degree of the disruptive nature of the speech or conduct, the court should consider "the time, place, and manner of the political activity" and "whether, taken in context, the particular activity was sufficiently hostile, abusive, or insubordinate as to disrupt significantly the continued operation of the office." *Id.* The *McBee* balancing test "operates to guarantee that the interests of the employee are weighed against the actual, and not merely inferred, interests of the employer." *Gomez*, 91 F. Supp. 2d at 1010.

In *Kinsey v. Salado Independent School District*, 950 F.2d 988 (5th Cir. 1992), the Fifth Circuit found that a school superintendent's rights of free speech and political association were not violated when he was relieved of his duties by school board members who were elected despite his active opposition. *Id.* The *Kinsey* court, considering the *McBee* "spectrum," noted that "cases involving public employees who occupy policymaker or confidential positions fall much closer to the employer's end of the spectrum, where the government's interests more easily outweigh the employee's (as a private citizen)." *Id.* at 994. The court noted that its "recognition that policymaking or confidential employees' First Amendment rights are more easily outweighed in balancing interests predates *McBee*," citing *Stegmaier v. Trammell*, 597 F.2d 1027, 1038-40 (5th Cir. 1979), discussed *supra*, *Gonzalez v. Benavides*, 712 F.2d 142, 148 (5th Cir. 1983), in which an executive director of a community action agency was terminated by elected county commissioners after publicly denying that the commissioners had supervisory authority over his job performance, and *Soderstrum v. Town of Grand Isle*, 925 F.2d 135 (5th Cir. 1991). In *Soderstrum*, a chief of police had employed his nephew's wife as his secretary, but several years later, upon the chief's defeat, the secretary was not rehired by the new chief.

*Id.* at 136. The secretary sued under § 1983, asserting she was terminated because of her political affiliation in violation of her First Amendment right to freedom of association. *Id.* The Fifth Circuit stated, "The case reduces, then, to the question whether [the secretary] served in a position of confidence requiring complete loyalty to the police chief." *Id.* at 140. The court found as follows:

> An incoming government official should be able to choose his personal secretary and should not be prevented by the First Amendment from replacing his defeated opponent's secretary and relative, at least when that person, as in this case, has unambiguously expressed her lack of confidence in the incoming official and her unwillingness to work in the new administration. . . . Because we find that [the secretary] fits the definition of a confidential employee, we need not address whether she was correctly deemed a policymaker as well.

*Id.* at 141 (citations omitted). The court's finding that the secretary was a confidential employee was based in part on the fact that the secretary "was privy to certain confidential files and documents." *Id.* at 140.

Similarly, in *Gentry v. Lowndes County, Miss.*, 337 F.3d 481 (5th Cir. 2003), the Fifth Circuit found that plaintiffs who held the posts of county road manager and county administrator "occupied politically sensitive and responsible posts in which loyalty to the elected board is an essential quality . . . and could therefore be terminated for supporting the board's political opponents." *Id*. at 483. The court based its decision in part on the fact that the duties required of the positions, which included, inter alia, preparing a budget, reporting to the board on the county's affairs and financial condition, and executing board resolutions and policies, "strongly influence the public's view of the elected board of supervisors." *Id.* at 488. The court found that the plaintiffs' positions would "enable them to advance the board's policies, if [the plaintiffs] act faithfully, or to undermine those policies by overt or covert opposition." *Id.* The court held that

7

"[b]ecause [the plaintiffs'] political activities created strains that could easily disrupt and prevent the effective performance of public services, the government interest must take precedence over those activities." *Id.*

Now turning its attention to the facts of the case at bar, the court notes that a tax assessor/collector in Mississippi is charged with the collecting and handling of significant amounts of taxpayer money and with the assessment and valuation of property within the county. Miss. Code Ann. §§ 21-1-7, -19, -23. Section 27-1-3 of the Mississippi Code provides that the elected tax assessor/collector may appoint deputy assessors who "shall take the oath of office and shall be required by the assessor to give bond to him in an amount not less than Ten Thousand Dollars ($10,000.00) for the faithful discharge of their duties." Section 27-1-9 provides that the tax collector may appoint deputies "to assist him in carrying out the duties of his office," with each deputy tax collector to give a bond of not less than $50,000.00. The Mississippi Code grants tax assessor/collectors as well as their deputies the power to, inter alia, "inspect books and accounts, papers, memoranda, and records" and to "make an estimate of the value of all property to be assessed." Miss. Code Ann. § 27-1-23. In addition to handling large sums of taxpayer funds, the tax assessor/collector and her deputies have the authority to investigate, inquire, and employ their own judgment to assess the true value of the electorate's property. *Id.* Mississippi law affords a deputy tax assessor/collector as much access and power as the elected tax assessor/collector. *Id.*

The court in *Stegmaier* found that because the circuit clerk's duties involved the handling of public funds, the electorate presumably chooses a circuit clerk based on his or her reputation for honesty and integrity. *Stegmaier*, 597 F.2d at 1040. It naturally follows that the electorate

8

would expect the elected official to choose deputies who will assist him or her in fulfilling the duties of the office with honesty and integrity. The same may be said of a tax assessor/collector in Mississippi. The court further found that according to Alabama law, the deputy clerk, appointed by the circuit clerk, may perform all of the elected circuit clerk's statutorily prescribed duties, and the circuit clerk may be held responsible for any failure or shortcomings in the execution of those duties. *Id.* Likewise, in Mississippi, deputy tax assessors may perform all of the elected tax assessor/collector's statutorily prescribed duties. *See* Miss. Code Ann. § 27-1-23. The *Stegmaier* court then found, based on these facts, that the elected circuit clerk should be afforded the opportunity to appoint a deputy in whom he has total trust and confidence and from whom he can expect "undivided loyalty." *Id.*

Applying the factors set forth in *Pickering*, as refined by *Connick* and adopted by *McBee*, this court first finds that Foster's campaigning for Smith's opponent, Holley, was arguably, at least to some degree, a matter of public concern, as a political election was involved and Foster clearly took a stance promoting her former boss to the public at large. The record indicates and common sense dictates, however, that Foster's actions may have been personally as well as politically motivated, considering Foster had been afforded the opportunity to work with both candidates and ostensibly developed a personal preference for Holley over Smith. While determining the degree to which Foster's actions were politically motivated rather than personally motivated or determining whether Smith was even aware of Foster's activities could create questions of fact, the court finds the matter immaterial in light of the remaining analysis.

Next, the record reveals that the Quitman County Tax Assessor/Collector's office is a small one, with only a handful of deputy assessors and collectors. While the *McBee* court

9

cautioned that the size of the office is not necessarily the focus of the inquiry, the court finds it relevant here. A small office with few employees naturally amplifies any awkwardness or discord among the employees, or in this case, between an employee and her boss. Though the plaintiff and defendant have testified that they do not personally dislike each other, the record also makes clear (and common sense again dictates) that at this point the relationship would be strained at best and could prevent the effective and efficient performance of the duties of the office.

Further, it is clear that close and confidential working relationships are essential in the Quitman County Tax Assessor/Collector's office and that the deputy assessor qualifies as a "confidential employee" for more reasons than the small size of the office. Here, the "particular public responsibility being carried out," as referenced in *McBee*, involves, among other things, the handling of large amounts of taxpayer monies and the valuation and assessment of taxpayer property. Like the court in *Stegmaier*, this court finds that the elected official here should be afforded the opportunity to appoint a deputy in whom she has complete trust and confidence and from whom she can expect undivided loyalty. Foster's open support and campaigning for Smith's opponent and sitting with him the night of the election while the votes were being counted would obviously preclude Smith's sense of undivided loyalty in Foster, and the court finds, paraphrasing the court in *Soderstrum*, that "[a]n incoming government official should be able to choose [her deputy] and should not be prevented by the First Amendment from replacing [her] defeated opponent's [deputy], at least when that person, as in this case, has unambiguously expressed her lack of confidence in the incoming official. . . ." *Soderstrum,* 925 F.2d at 141.

As to the disruptive nature of the activity, considering the time, place, and manner of the plaintiff's political activity, the court notes the plaintiff's uncontested testimony that she campaigned for Holley outside of the office on her own time. The court further notes, however, that openly supporting an employer's opponent, even if accomplished outside the office, could be and would be considered by most employers "insubordinate" or "hostile" behavior toward that employer – behavior which the Fifth Circuit recognized could cause disruption in the workplace. *McBee*, 730 F.2d at 1017 (quoting *Connick*, 461 U.S. at 152). Such circumstances as those at play here do not "promot[e] the efficiency of the public services [the defendant] performs through [her] employees." *Pickering*, 391 U.S. at 568. For the foregoing reasons, the court finds that the plaintiff's activities "sufficiently disrupted the working relationship [between Foster and Smith] as to prevent effective performance" of the duties of the Quitman County Tax Assessor/Collector's office. *Id.*

The court also finds that, as in *Gentry*, the parties here "occup[y] politically sensitive and responsible posts in which loyalty to the [electorate] is an essential quality . . . and [the plaintiff] could therefore be terminated for supporting the [defendant's] political opponent[ ]." *Gentry*, 337 F.3d at 483. As was the case in *Gentry*, the duties required of the positions at issue here "strongly influence the public's view of the elected [official]," and the plaintiff's confidential position would allow her to advance Smith's policies, if she were to act faithfully, "or to undermine those policies by overt or covert opposition," if she were so inclined. *Id.* This court therefore finds that "[b]ecause [the plaintiff's] political activities created strains that could easily disrupt and prevent the effective performance of public services, the government interest must take precedence over those activities." *Id.* Working under defendant Smith, Foster would

11

clearly be in a position of trust and confidence, and this position limits her right to engage in political activity against her superior, as established in *Kinsey* and its progeny.

In light of the foregoing analysis, the court finds that the plaintiff is a "confidential employee" as that term applies to free speech and political affiliation jurisprudence and further that the balancing test set forth above weighs in favor of the defendant, placing the plaintiff on the low protection end of the free speech and political affiliation "spectrum." Accordingly, the court finds that the plaintiff has suffered no actionable First Amendment violation. Having found that Foster is a "confidential employee" and having examined the record in light of the *McBee* balancing test to arrive at the result that the plaintiff has suffered no violation of her rights to free speech and political affiliation, the court finds it unnecessary to determine whether the plaintiff was likewise a "policymaker" under the applicable case law.

Before concluding, the court will address the defendant's assertion that she was not even aware of the plaintiff's political activities against her and in support of her opponent. The defendant contends that the legitimate, non-political motivation for the plaintiff's termination are the uncontested facts that Sally Price, the plaintiff's replacement, had more experience and expertise than the plaintiff, having served as the Quitman County Tax Assessor/Collector for a period, and that Price was certified as an assessor. The plaintiff admits that she did not have such certification or a comparable level of experience. The question of fact potentially created by the defendant's statement that she was unaware of the plaintiff's political activity is not material, however, because, if true, her assertion that she terminated Foster for a legitimate reason would likewise be true, at least for the purposes of this action, as the plaintiff has claimed no other illegitimate reason beyond the alleged First Amendment violations and does not contest

12

the factual assertions comprising the defendant's proffered reason, and, if false, the defendant's assertion remains immaterial because the court has found she was justified, according to the applicable law of this circuit, in terminating Foster, a confidential employee, for her political support of Smith's opponent.

Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion shall issue this day.

This, the 10th day of July, 2017.

    /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**